IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Nickolas Danikas,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>Carolina Time & Parking Group, Clint Joy, and Debra Allen-Jones,<br><br>　　　　　　　Defendants. | Case No. 4:24-cv-04480-JD-KDW<br><br><br>**ORDER AND OPINION** |

This matter is before the Court on two Reports and Recommendations (collectively, the "Reports") of United States Magistrate Judge Kaymani D. West, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) of the District of South Carolina.[1] The first Report recommends denying Defendants Carolina Time & Parking Group ("CTPG"), Clint Joy ("Joy"), and Debra Allen-Jones's ("Jones") Motion for Summary Judgment. (DE 82; *see* DE 61.) The second Report recommends denying Plaintiff Nickolas Danikas's ("Plaintiff") Motion for Summary Judgment. (DE 83; *see* DE 57.)

---

[1]     The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

Defendants filed objections to the first Report, and Plaintiff filed a reply.[2] (DE 85; DE 86.) No party filed a substantive objection to the second Report. Having carefully reviewed the Reports, Defendants' objections, Plaintiff's reply, and the record, the Court overrules Defendants' objections, adopts both Reports as modified and supplemented by this Order, and denies both motions for summary judgment.

## I.     BACKGROUND

The Reports set forth the relevant facts and legal standards, which the Court incorporates without a complete recitation. The Court provides the following summary as a brief background.

### A.     Factual Background

Plaintiff worked for CTPG as a commissioned salesperson from 1971 until February 28, 2023. He was seventy-two years old when his employment ended and had served the company for more than fifty years. (DE 82 at 4; DE 83 at 4.) The parties agree that Plaintiff had a strong sales record, including being named Salesperson of the Year three times during the final six years of his employment. (DE 57-8 ¶¶ 3–7.) Joy served as CTPG's Chief Executive Officer, and Jones served as its President. (DE 82-1 ¶¶ 2–3.)

In August 2021, CTPG hired Brian Roberts, a substantially younger salesperson, to work in the Wilmington and Myrtle Beach territory. (DE 57-8 ¶ 19; DE 82 at 4.) CTPG then presented Plaintiff with a document titled "Employment

---

[2]     Although DE 86 was docketed as a reply concerning DE 83, its caption and substance make clear that it responds to Defendants' objections to DE 82. (DE 86 at 1, 4–16.) It does not challenge the recommendation that Plaintiff's motion be denied.

Agreement and Transition" (the "Agreement"). The Agreement provided that Plaintiff's employment would continue through July 31, 2022, while he trained Roberts; provided for monthly commission draws and an additional $10,000 payment if Plaintiff satisfied the transition requirements; and stated that, at the end of the Agreement, "there are a number of options that we mutually can take, including ongoing commission earning or consulting." (DE 57-7 at 32–33; DE 57-8 ¶¶ 9–11.)

Plaintiff and Joy exchanged emails about the Agreement. Plaintiff asked whether jobs had to be completed before his employment was "up" for him to receive a commission. Joy answered, "No, based on jobs sold," and added that outstanding commissions would be paid after the initial year. Plaintiff also asked about the options available at the end of the year and what would happen to commissions if he decided to retire before the year ended. (DE 70-2 at 15–17.) Defendants contend that these communications reflect a mutual retirement plan; Plaintiff contends they reflect only a transition of duties and leave the future of his employment open.

The Agreement expired on July 31, 2022, but Plaintiff continued working. The parties' Joint Statement of Undisputed Material Facts states that they "elected for Mr. Danikas to continue working for Carolina Time." (DE 57-8 ¶ 12.) Plaintiff later told Joy and Jones that he was not ready to retire. (DE 59 ¶¶ 28–29; DE 82-1 ¶¶ 28–29.) The record also contains evidence that, during discussions about Plaintiff's continued employment, Jones stated that Plaintiff was at an age when he should spend time with his grandchildren and that Joy referenced the company's older

3

workforce. (DE 57-5, Jones Dep. 267:19–268:10; DE 59-1, Danikas Dep. 28:10–25; see DE 82-1 at 7.)

In December 2022, CTPG presented Plaintiff with a revised agreement contemplating his retirement on February 28, 2023. Plaintiff did not sign it. (DE 57-7 at 39–45; DE 57-8 ¶¶ 13–14.) On January 9, 2023, Plaintiff's counsel advised CTPG in writing that Plaintiff did not intend to retire and asserted that CTPG's conduct violated the ADEA. (DE 57-7 at 47–49.) CTPG ended Plaintiff's employment on February 28, 2023. Joy testified that he and Jones made the decision to terminate Plaintiff because CTPG believed a retirement transition plan was already in place. (DE 82-1 ¶ 32.) Defendants' Answer likewise admits that Plaintiff "was terminated effective February 28, 2023," while denying that the termination was unlawful. (DE 6 ¶¶ 9, 33.)

The parties also dispute whether Plaintiff is owed commissions on numerous sales, monthly commission draws, and the $10,000 payment contemplated in the Agreement. Plaintiff contends that the amounts were earned and withheld without justification. Defendants contend that some commissions were not payable after separation, some were paid to Roberts, some sales were unprofitable, and Plaintiff did not satisfy the Agreement's transition requirements. (DE 82 at 11–13; DE 83 at 13–22.)

## B.    Procedural Posture

Plaintiff filed this action in the Horry County Court of Common Pleas on July 11, 2024, asserting ADEA discrimination and retaliation claims against CTPG, a

breach of contract claim against CTPG, and a South Carolina Payment of Wages Act ("SCPWA") claim against all Defendants. (DE 1-1; DE 82 at 1.) Defendants removed the action and answered the Complaint. (DE 1; DE 6.)

Following discovery, the parties cross-moved for summary judgment and supporting factual submissions. (DE 57; DE 59; DE 61; DE 68–75.) On June 8, 2026, the Magistrate Judge issued separate Reports recommending that both motions be denied. (DE 82; DE 83.) Defendants timely objected to the Report addressing their motion, and Plaintiff replied. (DE 85; DE 86.)

## II.     REPORTS AND RECOMMENDATIONS

### A.     Defendants' Motion for Summary Judgment

The first Report recommends denying Defendants' Motion for Summary Judgment in its entirety. As to age discrimination, the Report concludes that the Agreement, the conflicting testimony about whether Plaintiff agreed to retire, Plaintiff's continued employment after July 31, 2022, the unsigned revised agreement, and the age-related comments create genuine disputes from which a reasonable jury could find that age was the determinative factor in Plaintiff's termination. (DE 82 at 6–10.) As to retaliation, the Report concludes that the January 9, 2023, letter was protected activity and that the disputed timing and basis of the termination create a triable issue. (*Id.* at 10–11.) The Report also concludes that conflicting evidence concerning commissions, Plaintiff's performance under the Agreement, the $10,000 payment, and monthly draws precludes summary judgment on the breach of contract and SCPWA claims. (*Id.* at 11–13.) The Report also

5

concludes that conflicting evidence concerning commissions, Plaintiff's performance under the Agreement, and other amounts allegedly due under the Agreement precludes summary judgment on the breach of contract and SCPWA claims. (*Id.* at 11–13.)

**B.     Plaintiff's Motion for Summary Judgment**

The second Report recommends denying Plaintiff's Motion for Summary Judgment. The Report concludes that Plaintiff produced sufficient evidence for the ADEA claims to proceed to a jury, but Defendants also produced evidence supporting their position that the separation implemented an earlier retirement transition. Plaintiff, therefore, did not establish discrimination or retaliation as a matter of law. (DE 83 at 7–13.) The Report likewise concludes that factual disputes remain as to whether particular commissions were earned, paid, or payable; whether Plaintiff satisfied the Agreement's conditions; and whether the $10,000 payment and monthly draws were due. (*Id.* at 13–22.)

### III.     LEGAL STANDARD

To be actionable, objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. *See United States v. Schronce*, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). "The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that 'the filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of

the parties' dispute.'" *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing *Thomas v. Arn*, 474 U.S. 140, 147 (1985) (emphasis added)). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this Court is not required to give any explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

## IV.     DEFENDANTS' OBJECTIONS

Defendants raise three objections. First, they contend that the record establishes as a matter of law that Plaintiff agreed to retire and, therefore, cannot prove age discrimination. Second, they contend that the January 2023 protected activity could not have caused a decision made in August 2021. Third, they contend that the Agreement supplied written notice that post-separation commissions were only a conditional option and, therefore, defeats the state-law claims. (DE 85 at 1–4.)

### A.     ADEA Discrimination

Defendants first object to the recommendation that Plaintiff's age discrimination claim proceed to trial. They argue that the pre-Agreement discussions, the Agreement itself, and Plaintiff's contemporaneous emails establish a mutual retirement plan. They also contend that merely proposing retirement is not discriminatory and that the later age-related comments were remote, stray remarks made after the retirement decision. (DE 85 at 1–4.)

The ADEA requires Plaintiff ultimately to prove that age was the but-for cause of the challenged employment action. *See Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176–78 (2009). Plaintiff may rely on direct or circumstantial evidence. *See*

*Westmoreland v. TWC Administration LLC*, 924 F.3d 718, 725 (4th Cir. 2019). At summary judgment, a plaintiff may satisfy that burden by producing sufficient evidence to cast doubt on the employer's stated reason such that a reasonable jury could find age was the determinative factor. *See Arthur v. Pet Dairy*, 593 F. App'x 211, 221 (4th Cir. 2015).

Defendants' argument rests on a disputed premise: that Plaintiff made a final retirement decision in 2021. Joy testified that Plaintiff expressed an intent to retire before the Agreement was issued. Plaintiff testified that retirement "was never mentioned on [his] part" and that, if he retired, he expected it to be years later. (Danikas Dep. 37:20–25; see DE 82 at 7–8.) Defendants' assertion that Plaintiff's account is "implausible" does not eliminate that conflict. (DE 85 at 2.) Resolving the parties' competing testimony would require the Court to weigh credibility, which it may not do at summary judgment.

The written materials likewise permit competing inferences. The Agreement states that Plaintiff's employment would "continue" through July 31, 2022, but it does not state that Plaintiff irrevocably resigned or would retire on that date. Instead, it contemplates that the parties could mutually select among future options, including ongoing commission earning or consulting. (DE 57-7 at 32–33.) The August 2021 email exchange contains language supporting both sides: Plaintiff referred to when his employment was "up" and asked about retiring before the year ended, while Joy stated that commissions would be based on jobs sold, that outstanding commissions would be paid after the initial year, and that future options remained open. (DE 70-

2 at 15–17.) The Court cannot select Defendants' interpretation as the only reasonable one.

Defendants also point to Plaintiff's March 23, 2022, email asking to discuss his "retirement options." (DE 85 at 3.) That evidence supports Defendants' interpretation of the parties' arrangement, but it does not make that interpretation the only reasonable one. When questioned about the email, Plaintiff testified that he was referring to the "options" contemplated at the end of Roberts's training period. (Danikas Dep. 22:9–23.) A jury could credit Defendants' interpretation of that exchange, but the Court may not resolve the competing inference at summary judgment.

The parties' later conduct deepens the dispute. Plaintiff continued working after the Agreement expired, and the parties jointly stipulated that they elected for him to continue working. (DE 57-8 ¶ 12.) Defendants characterize the parties' continued arrangement as extensions of the Transition Agreement through February 2023. Even accepting evidence that aspects of the transition arrangement continued, however, the record does not require the further conclusion that Plaintiff had irrevocably agreed to retire on February 28, 2023. CTPG later presented a revised agreement expressly contemplating retirement on February 28, 2023, but Plaintiff did not sign it. (*Id.* ¶¶ 13–14; DE 57-7 at 39–45.) Joy then testified that he and Jones made the decision to terminate Plaintiff on February 28, 2023, because they believed the transition plan contemplated Plaintiff's retirement. (DE 82-1 ¶ 32.) A jury could accept Defendants' explanation, but it also could view the continued employment and

unsigned revised agreement as evidence that no final retirement commitment had previously been reached.

Nor does *Palmer v. Liberty University, Inc.*, 72 F.4th 52, 64–65 (4th Cir. 2023), require a different result. *Palmer* holds that comments or inquiries concerning retirement, without more, are not direct evidence of age discrimination. The Court does not conclude here that the mere discussion or proposal of retirement establishes discriminatory animus. Rather, the Court considers the disputed circumstances surrounding the asserted retirement agreement together with Plaintiff's continued employment, the later unsigned agreement, and the alleged age-specific comments by the decisionmakers.

The authorities on which Defendants rely do not compel a different result. *Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 71 (1st Cir. 2002), explains that the mere tender of a retirement proposal does not itself prove discriminatory animus. Plaintiff, however, relies on substantially more than the tender of a proposal. And in *Cashman v. CNA Financial Corp.*, No. 08-5102, 2012 WL 113667, at *6–7, *11 (E.D. Pa. Jan. 13, 2012), the employee gave written notice of a definite retirement date and attempted to rescind that notice weeks later. Here, the existence, terms, and timing of any retirement commitment are disputed, and Plaintiff continued working beyond the Agreement's stated term. (DE 82 at 8–9.)

Defendants also rely on *Arthur* for the proposition that, when an employer identifies legitimate motivations for an employment decision, the plaintiff must produce evidence from which the factfinder could conclude those motivations were

10

not the actual reason for the decision. *See* 593 F. App'x at 220–21. That principle does not resolve this case at summary judgment. In *Arthur*, the record contained independent evidence of performance deficiencies and a major customer's demand that the employee be removed. Here, by contrast, Defendants' asserted nondiscriminatory explanation—that the February 2023 separation merely implemented Plaintiff's prior agreement to retire—depends on the same disputed facts discussed above. If a jury credits Plaintiff's evidence that no final retirement commitment had been reached, it could also reject Defendants' asserted reason for ending his employment.

Defendants' reliance on *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511–12 (4th Cir. 1994), is likewise unpersuasive at this stage. There, the challenged remark was made only once, more than two years before the layoffs, and was too remote to support an inference that it influenced the challenged employment decisions. *Id.* at 511–12. *Id.* Here, the alleged comments were made by the decisionmakers during meetings concerning Plaintiff's retirement and continued employment. (Jones Dep. 234:15–235:11, 267:19–268:10; Danikas Dep. 28:10–25.) Defendants' assertion that those comments came after the decision again assumes that the retirement decision was final in 2021—the central fact in dispute.

The Court need not decide whether the comments constitute direct evidence. Viewed as a whole and in Plaintiff's favor, the disputed retirement discussions, the Agreement and emails, Plaintiff's continued employment, the unsigned revised agreement, and the decisionmakers' age-related comments would permit a

11

reasonable jury to find that age was the determinative factor in the termination. Defendants' first objection is overruled.

**B.    ADEA Retaliation**

Defendants next object to the recommendation that the retaliation claim proceed to trial. Their objection depends on the same premise: because Plaintiff allegedly agreed in August 2021 to retire, his January 9, 2023 protected complaint could not have caused the February 2023 termination. (DE 85 at 4.)

To establish a prima facie case of ADEA retaliation, Plaintiff must show that he engaged in protected activity, suffered an adverse action, and that a causal connection existed between the two. *See Walton v. Harker*, 33 F.4th 165, 177 (4th Cir. 2022). Causation may be inferred when an employer takes adverse action shortly after learning of the protected activity, although "the temporal proximity must be very close." *Massaro v. Fairfax County*, 95 F.4th 895, 902 (4th Cir. 2024) (citation omitted).

The parties characterize the January 9, 2023, letter as protected activity. (DE 82 at 10; DE 83 at 12.) The letter expressly stated that Plaintiff did not intend to retire and asserted that CTPG's conduct violated the ADEA. (DE 57-7 at 47–49.) CTPG ended Plaintiff's employment about seven weeks later. That timing, considered together with the evidence from which a jury could find that no final termination or retirement decision had been made before Plaintiff's protected complaint, is sufficient to permit a causal inference at the prima facie stage

12

The record also permits competing inferences about when the termination decision became final. The original Agreement expired in July 2022; Plaintiff continued working; the revised agreement was unsigned; and the parties continued discussing Plaintiff's employment into December 2022. (DE 57-8 ¶¶ 12–14.) A jury could accept Defendants' position that the February termination merely implemented a settled 2021 retirement plan. But a jury also could find that no final decision existed when Plaintiff rejected the revised agreement and complained of age discrimination. The Court cannot choose between those competing inferences on summary judgment.

Defendants' objection also does not eliminate the factual dispute at the pretext stage. Defendants contend that the February 2023 separation was not retaliatory because it merely implemented the retirement arrangement reached in 2021. That is a legitimate, nonretaliatory explanation if the jury accepts Defendants' account. But, as discussed above, a reasonable jury could instead find that Plaintiff had not made a final commitment to retire, that his employment continued beyond the original Agreement, and that the parties were still attempting to reach an agreement concerning his departure in late 2022. A jury crediting that evidence could reject Defendants' characterization of the February 2023 termination as the inevitable implementation of a decision already made in 2021.

Accordingly, the approximately seven-week interval between Plaintiff's protected complaint and the termination does not stand alone. Considered with the evidence concerning when and why the termination decision became final, the record permits competing reasonable inferences as to Defendants' asserted reason and the

13

causal role of Plaintiff's protected activity. Resolving those inferences would require the Court to weigh evidence and credibility. Defendants' second objection is therefore overruled.

## C.     Breach of Contract and SCPWA Claims

Defendants lastly object to the recommendation that the state-law claims proceed to trial. Defendants contend that the Agreement supplied any written notice required by the SCPWA by informing Plaintiff that "ongoing commission earning" after separation was only a conditional option. From that premise, Defendants argue that the Agreement defeats Plaintiff's commission claims. (DE 85 at 4.)

The Court first rejects Defendants' characterization that the Report "relied only" on the 2016 Commission Plan in finding a factual dispute. (DE 85 at 4.) The Report also considered the Transition Agreement, the conditions associated with the transition, Plaintiff's alleged noncompliance with those conditions, and Joy's contemporaneous response concerning commissions on jobs Plaintiff had sold. (DE 82 at 11–13.) The issue, therefore, is not whether the Agreement may establish contractual compensation terms as a matter of South Carolina law; it is whether Defendants have established as a matter of law what compensation terms governed the particular commissions at issue and whether those terms were satisfied.

South Carolina law permits an employer and employee to contract for the terms on which commissions are earned and paid. *See Rice v. Multimedia, Inc.*, 318 S.C. 95, 100, 456 S.E.2d 381, 384 (1995). The existence of the Agreement, however, does not establish Defendants' interpretation of it as a matter of law.

14

First, the Agreement and accompanying email do not unambiguously foreclose post-separation commissions on jobs Plaintiff had already sold. The Agreement identified "ongoing commission earning" as one possible future arrangement and conditioned future options on cooperation with the transition. (DE 57-7 at 32–33.) But when Plaintiff asked whether jobs had to be completed before his employment was "up" for him to receive commissions, Joy responded, "No, based on jobs sold," and stated that outstanding commissions would be paid after the initial year. (DE 70-2 at 15–17.) A reasonable jury could read that exchange as promising commissions on qualifying jobs Plaintiff sold even if CTPG received payment after his employment ended.

Second, the parties sharply dispute whether Plaintiff satisfied the transition requirements. Roberts stated that Plaintiff did not consistently train him, pass along leads, or identify him to customers as Plaintiff's replacement. (DE 68-1, Roberts Decl. ¶¶ 3–7.) Plaintiff testified that he worked with Roberts for the required time until Roberts stopped appearing regularly and that he satisfied the Agreement's other requirements. (Danikas Dep. 10:10–14:23.) Joy acknowledged that he had no method to track whether Plaintiff and Roberts spent twenty-four hours per week together. (DE 59-2, Joy Dep. 157:9–16.) Those conflicts bear directly on the $10,000 payment and Defendants' asserted basis for withholding commissions. That conclusion is consistent with *Rice*. Although *Rice* enforced a contractual departure policy governing commissions, it also held that conflicting evidence concerning whether that policy

15

applied to particular commissions presented an issue for the jury. 318 S.C. at 101, 456 S.E.2d at 385.

Third, the commission dispute extends beyond the Agreement's general reference to future commission earning. The record contains competing evidence about twenty-seven jobs reflected as dollar amounts on Jones's spreadsheet, fourteen jobs marked "pd," commissions allegedly paid to Roberts, the Wicked Tuna sale, five low-margin jobs, and the documentation supporting the payment decisions. (DE 83 at 15–19.) Defendants acknowledge that some commissions were held rather than paid, while disputing whether Plaintiff was entitled to them. (DE 59-5; DE 82 at 12–13.) The record also contains conflicting testimony and incomplete payroll documentation concerning whether and to whom particular commissions were paid. (Jones Second Dep. 21–22, 27–29, 32–38.)

Defendants' objection does not specifically address the Reports' separate analysis of the $10,000 payment or the monthly draws. The Court has reviewed those portions for clear error and finds none. (DE 82 at 11–13; DE 83 at 19–22.) Because genuine disputes remain as to contract interpretation, performance, whether particular commissions were earned or paid, and the amount of any unpaid wages, Defendants are not entitled to summary judgment on the breach of contract or SCPWA claims. Their third objection is overruled.

## V.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

No party filed a substantive objection to the Report recommending denial of Plaintiff's Motion for Summary Judgment. The Court has reviewed the Report and the record for clear error and finds none.

As the Report explains, the same disputes that preclude judgment for Defendants also preclude judgment for Plaintiff. Defendants produced evidence from which a jury could find that the parties discussed retirement, that Plaintiff understood the Agreement as a retirement transition, and that CTPG relied on that understanding when it hired and trained Roberts. (DE 83 at 7–11.) Viewed in Defendants' favor, that evidence precludes judgment for Plaintiff on the ADEA discrimination and retaliation claims. (*Id.* at 11–13.)

The state-law claims likewise depend on disputed testimony and documents concerning whether commissions were earned, whether they were paid to Plaintiff or Roberts, whether particular jobs were profitable, whether Plaintiff complied with the Agreement, and whether the monthly draws and $10,000 payment were due. (*Id.* at 13–22.) Those issues must be resolved by a jury. The Court, therefore, accepts the second Report's recommendation and adopts its reasoning to the extent consistent with this Order. Plaintiff's Motion for Summary Judgment is denied.

## VI.    CONCLUSION

Accordingly, after a thorough review of the Reports, Defendants' objections, Plaintiff's reply, the record, and the applicable law, the Court overrules Defendants' objections (DE 85), accepts the recommendation in the Report addressing Defendants'

17

motion (DE 82), and adopts that Report as modified and supplemented by this Order. Defendants' Motion for Summary Judgment (DE 61) is denied.

The Court further finds no clear error in the Report addressing Plaintiff's motion, accepts its recommendation, and adopts that Report (DE 83) as modified and supplemented by this Order. Plaintiff's Motion for Summary Judgment (DE 57) is denied.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
August 10, 2026

18